𝔍𝔫 𝔱𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰

𝔉𝔬𝔯 𝔗𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔖𝔬𝔲𝔱𝔥 𝔆𝔞𝔯𝔬𝔩𝔦𝔫𝔞

BEAUFORT  DIVISION

| | |
|---|---|
| **DELLA J. SNIPES**, ) | |
| ) | Civil Action No. 9:05-2724-SB-GCK |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **JO ANNE B. BARNHART**, ) | **OF THE MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## I.  INTRODUCTION

This case is before the Court pursuant to Local Civil Rule 83.VII.02(A), D.S.C.,

concerning the disposition of Social Security cases in this District, and Title 28, United States

Code, Section 636(c).

The plaintiff, Della J. Snipes (the "Plaintiff" or "Claimant"), brought this action pursuant

to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g)

and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social

Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act,

respectively.[1]

---

[1]    The Social Security Act comprises two disability benefits programs.  The Social Security Disability
Insurance Program, established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides
Disability Insurance Benefits ("DIB") to disabled persons who have contributed to the program while
employed.  The Supplemental Security Income Program ("SSI"), established by Title XVI of the Act
as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons.  The statutory
definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R.
pt. 404 (DIB); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here,

## II.  BACKGROUND TO CLAIM

Plaintiff was born on September 2, 1951, and was 51 years old at the time she alleged disability, due to obesity, high blood pressure (hypertension), diabetes, memory loss, shortness of breath, dizziness, depression, joint pain, fatigue, carpal tunnel syndrome, and blurred vision. (Tr. 18; 41-47; 54-60; 62-63; 94)  Plaintiff completed the seventh grade and has worked in the past as an assistant manager and a cashier at a convenience store, and as a kitchen helper in a restaurant.  (Tr. 18; 95)

## III.  ADMINISTRATIVE PROCEEDINGS

The Plaintiff protectively filed an application for SSI and DIB on April 10, 2003, alleging disability beginning September 10, 2001, which was her last day of work at Fatts Café, where she mopped floors.  (Tr.18-19; 40)  Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration and a request for hearing was timely filed on March 5, 2004.

An administrative hearing was held on January 26, 2005, in Columbia, South Carolina before Administrative Law Judge John Randolph Martin (the "ALJ").  Plaintiff appeared and testified; she was represented by W. Daniel Mayes, Esquire.  William W. Stewart, Ph.D. also testified as an impartial vocational expert.

At the time of the hearing, Plaintiff was 53 years old.  She testified her duties as a convenience store cashier/assistant manager included daily bank deposits, shift reports, and compiling a daily report on Sundays.  (Tr. 36-38)  She testified she was required to stand eight hours per day with no breaks, which she could no longer do, and that her memory problems

---

substantively identical.  *See Bowen v. City of New York*, 476 U.S. 467, 469-470 (1986).

might preclude her from doing the mental aspects of the job.  (Tr. 61-63)  She testified she could not return to her past work as a convenience store cashier because she was afraid she was going to "forget when I'm giving out change," and because she did not know if she could "deal with the public anymore."  (Tr. 60-61)  Plaintiff testified she stopped working due to burning back pain from standing on her feet and mopping.  (Tr. 40-41)  She further testified she could not afford to see a doctor for her joints.  (Tr. 41-42)  She said she had carpal tunnel syndrome in both wrists, but did not remember which wrist was worse.  (Tr. 42)

Plaintiff testified she had stiffness in her shoulders when lifting up her arms and that her right shoulder used to be worse, but her left shoulder was the one "bothering" her currently.  (Tr. 42-43)  She testified she had a "hump" on her back that caused shoulder and neck pain (Tr. 43) and that back and joint pain kept her awake at night.  (Tr. 43, 46)

With respect to Plaintiff's diabetes, Plaintiff took Glucotrol and Actos, but not insulin; her blood sugar was 422 at her last doctor's visit, and currently "down to 200".  (Tr. 44)  She said she had short term memory problems that caused her to "scorch a couple of things" while cooking.  (Tr. 45)  She testified she sometimes had shortness of breath, but that she was okay "as long as I don't get up and overdo."  (Tr. 45)  Mentally, Plaintiff testified she never had been to counseling and that the medications she "just started" helped a little bit, but that she still had crying spells.  (Tr. 46-47, 57, 59-60).  Plaintiff testified she had no side effects from her medications.  (Tr. 58)

As to her daily activities, Plaintiff testified she could dress, feed, and bathe herself, and that she rarely drove because she got nervous because "[t]here's too many crazy people out there who don't drive like they ought to".  (Tr. 52)  She sometimes washed dishes, made her bed, did

light cleaning, laundered clothes, prepared a sandwich, and went to church on Sundays.  (Tr. 53-55, 58)  Functionally, Plaintiff testified she had joint pain if she stood more than 5 to 10 minutes (Tr. 54) and that sitting down made her feel "a lot better".  (Tr. 55)  She testified she could lift or carry some light things, noting the heaviest thing she could lift was a gallon of tea.  (Tr. 55-56)

William W. Stewart, Ph.D. also testified as an impartial vocational expert ("VE") (Tr. 47-51, 64-65, see professional qualifications at Tr. 82-83).  The VE testified that Plaintiff's past relevant work as a convenience store cashier was light to medium, and unskilled to low semiskilled, with no transferable skills to sedentary work.  (Tr. 47-48)  In response to a hypothetical question from the ALJ, the VE testified that an individual of claimant's age, education, and past relevant work experience, with the same impairments (diabetes, hypertension, depression, arthritis of the cervical lumbar spine, carpal tunnel syndrome of the left hand, moderate obesity, shortness of breath, possible pulmonary insufficiency, possible arthritis of the shoulder, in particular the right shoulder, general arthritis pain), and a residual functional capacity for a reduced range of light work as set forth by Dr. Crosby[2] could not do Plaintiff's past restaurant work, but that he "would not necessarily rule out the convenience store work".  (Tr. 49-50)  Upon further questioning by the ALJ, the VE explained that there "normally [was] not a lot of overhead [reaching] in a convenience store".  (Tr. 49-50)  The VE also testified that if all of Plaintiff's subjective complaints were accepted as true, she would not be able to work.  (Tr. 64-65)

---

[2]    Dr. Crosby opined Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit and stand/walk about six hours in eight hour workday; never climb ropes/ladders/scaffolds; occasionally climb ramps/stairs, occasionally stoop; and frequently balance, kneel, crouch, crawl.  (Tr. 189-96) With regard to the upper extremities, Dr. Crosby found Plaintiff was limited to frequent push/pull and handling with her left upper extremity; and limited to frequent overhead reaching with her right upper extremity.  (Tr.189-96)

On March 17, 2005, the ALJ issued a decision denying benefits to Plaintiff.  (Tr. 14-24)

The Plaintiff filed a Request for Review of Hearing Decision/Order with the Appeals Council on

May 16, 2005.  (Tr. 11)  The Appeals Council denied Plaintiff's appeal on July 29, 2005 (Tr. 6-

10), thereby making the ALJ's decision the Commissioner's final decision for the purposes of

judicial review.  *See* 20 C.F.R. §§ 404.981, 416.1481.  The Plaintiff has exhausted her

administrative remedies, the parties have briefed the case, and it is now ripe for judicial review

under Section 205(g) of the Act, 42 U.S.C. § 405(g).

## IV.  THE COMMISSIONER'S FINDINGS

In making her determination that the Plaintiff is not entitled to benefits, the

Commissioner has adopted the following findings of the ALJ:

1.  The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2001 or through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant's obesity, non insulin diabetes mellitus, chronic back and neck pain, hypertension, and depression are considered "severe" based on the requirements in the Regulations.  20 CFR §§ 404.1520(c) and 416.920(c).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 and 16.

5.  The undersigned finds the claimant's allegations, statements, and testimony regarding her limitations and other subjective symptoms are not totally credible to the extent alleged for the reasons set forth in the body of the decision.  Her allegations of obesity, blood pressure, diabetes, memory loss, shortness of breath, dizziness, depression, joint pain, fatigue, carpal tunnel syndrome, and blurred vision occurring with such frequency and severity as to preclude all substantial gainful activity are not supported by the overall evidence of the record.

6.  The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR 416.927)

7.    Considering the claimant's combination of severe and non severe impairments, she has the residual functional capacity to perform the physical exertional requirements of light work with restrictions which require lifting no more than 20 pounds occasionally and no more than 10 pounds frequently; standing/walking/sitting for about six hours each in an eight hour workday; occasionally climb ramps/stairs, and engage in activities that require stooping, but never climb ladders/ropes/scaffolds; no overhead reaching with her right arm or performing gross manipulation; repetitive fine dexterity or gripping with the right hand or operating controls with the left lower extremity.

8.    The claimant's past relevant work as a convenience store clerk and assistant manager, does not require the performance of work-related activities precluded by the above limitations set forth in Finding No. 7 (20 CFR §§ 404.1565 and 416.965).

9.    The claimant was not under a "disability" as defined in the Social Security Act, at any time prior to her date last insured December 3, 2001 or through the date of this decision. (20 CFR §§ 404.1520(f) and 416.920(f)). (Tr. 23-24)

## V.  APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those

persons insured for benefits, who are not of retirement age, who properly apply, and who are

"under a disability."  42 U.S.C. § 423(a).  Disability is defined as "the inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2005); 20 C.F.R.

§ 404.1509; *Barnhart v. Walton*, 535 U.S. 212 (2002).

To facilitate a uniform and efficient processing of disability claims, the Social Security

Act has by regulation reduced the statutory definition of "disability" to a series of five sequential

questions that are to be asked during the course of a disability determination.  20 C.F.R. §§

404.1520, 1520a (2005); *Heckler v. Campbell*, 461 U.S. 458 (1983); *Walls v. Barnhart*, 296 F.3d

287, 290 (4th Cir. 2002); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).  The five questions are:

(1) whether the claimant is engaged in substantial gainful activity as defined in Sections 404.1510, 404.1571 et seq., 416.971 *et seq.*  If such determination is affirmative, no disability will be found. 20 C.F.R. §§ 404.1520, 416.920.

(2) whether the claimant's impairments meet the durational requirement (Sections 404.1509 and 416.909) and are severe (Sections 404.1520(c), 416.920(c)).  If they do not meet those requirements, no disability will be found.  20 C.F.R. §§ 404.1509, 416.909, 404.1520(c), 416.920(c).

(3) whether the claimant has an impairment which meets or medically equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1) (the "Listing of Impairments") 20 C.F.R. §§ 404.1520(d), 416.920(d).  If one of the listings is met, disability will be found without consideration of age, education or work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).

(4) whether the claimant has an impairment which prevents past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).

(5) whether, in light of vocational factors such as age, education, work experience and residual functional capacity ("RFC"), the claimant is capable of other work in the national economy.  The claimant is entitled to disability only if the answer is "no."  20 C.F.R.§§ 404.1520(f), 416.920(f).

An individual may be determined not disabled at any step if found to be:  gainfully employed, not severely impaired, not impaired under the Listing of Impairments (20 C.F.R. Pt. 404, Subpart P, App. 1), or capable of returning to former work.  In such case, further inquiry is unnecessary.  If, however, the claimant makes a showing at Step Four that return to past relevant work is not possible, the burden shifts to the Commissioner to come forward at Step Five and "prove that the claimant, despite her impairments, can perform a 'significant number of jobs in the national economy.'"  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (*per curiam*), *quoting Walls*, 296 F.3d at 290.  The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (the "Grids") or by calling a vocational expert to testify.  20 C.F.R. § 404.1566.  The Commissioner must prove both the claimant's capacity and the job's existence.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  If an individual is found not

disabled at any step, further inquiry is unnecessary.  *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  Only if the final step is reached does the fact finder consider the claimant's age, education, and work experience in light of his or her residual functional capacity.  *See Hall*, 658 F.2d at 264.

With respect to the general procedure for determining SSI disability benefits, the standard consists of a two-fold test:  The claimant must show a medically determinable physical or mental impairment, and the impairment must be such as to render the claimant unable to engage in substantial gainful employment.  *Walker v. Harris*, 642 F.2d 712 (4th Cir. 1981), *citing Blalock v. Richardson*, 438 F.2d 773 (4th Cir. 1972); 42 U.S.C. § 423(d); 20 C.F.R. § 404.1501(b).

## VI.  SCOPE OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g) and § 1383(6)(3), this court's scope of review of the Commissioner's final decision is limited to:  (1) whether the decision of the Commissioner is supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Court's scope of review is specific and narrow.  It does not conduct a *de novo* review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees with it, so long as it is supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Smith v. Chater*, 99 F.3d 635, 637 (4th Cir. 1996); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  "Substantial evidence is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d at 653, *citing Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). At a minimum, "substantial evidence" to support the Commissioner's decision must include:  (1) objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history and present age. *Blalock*, 483 F.2d at 776.  In reviewing for substantial evidence, the court will not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Johnson v. Barnhart*,, 434 F.3d at 653, *citing Craig*, 76 F.3d at 589 (internal quotation marks omitted). If substantial evidence supports the Commissioner's decision that a claimant is not disabled, the decision must be affirmed. *Blalock*, 483 F.2d at 775.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Johnson v. Barnhart*, 434 F.3d at 653, *citing Craig*, 76 F.3d at 589 (internal quotation marks omitted); *see also Hays*, 907 F.2d at 1456 (It is the duty of the ALJ reviewing the case, and not the duty of the Court, to make findings of fact and resolve conflicts in the evidence) *and Smith v. Chater*, 99 F.3d at 638 (the duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court) (citation omitted).  Therefore, if substantial evidence supports the Commissioner's decision that a claimant is not disabled, the decision must be affirmed. *Blalock*, 483 F.2d at 775.

Nevertheless, this deferential standard of review does not mean that "the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F2d. 278, 279 (4th Cir. 1969). The court also must determine whether the Commissioner's decision complies with applicable law. *Myers v. Califano*, 611 F.2d 980 (4th Cir. 1982). Therefore, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that [the] conclusion is rational. *Vitek v. Finch*, 438 F.2d 1157, 1157-1158 (4th Cir. 1971) (citations omitted). "A factual finding by an ALJ is not binding if it has been reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "Where the [Commissioner's] determination is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing'" pursuant to Section 405(g). *Vitek*, 438 F.2d at 1158 (citations omitted); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

## VII. THE ALJ'S ANALYSIS

Consistent with the five step "sequential evaluation" for the adjudication of disability claims, the ALJ first found the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability in September 2001. (Tr. 23, Finding 2) At Step Two, the ALJ found

that Plaintiff established that she had a "severe"[3] impairments (listed as obesity, non insulin

diabetes mellitus, chronic back and neck pain, hypertension, and depression).  (Tr. 23, Finding 3)

At Step Three, the ALJ found that these medically determinable impairments did not meet or

medically equal any of the criteria listed in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.  (Tr. 23,

Finding 4)  Prior to determining at Step Four whether Plaintiff could perform her past relevant

work, the ALJ assessed Plaintiff's residual functional capacity by evaluating the medical

evidence and Plaintiff's subjective complaints.  (Tr. 19-24, Findings 5-7)  The ALJ found that

Plaintiff's allegations regarding her limitations were not totally credible.  (Tr. 23, Finding 5)

After assessing all of the evidence, the ALJ found that Plaintiff had the residual functional

capacity to perform:

> [T]he physical exertional requirements of light work with restrictions which require lifting no more
> than 20 pounds occasionally and no more than 10 pounds frequently; standing/walking/sitting for
> about six hours each in an eight hour workday; occasionally climb ramps/stairs, and engage in
> activities that require stooping, but never climb ladders, ropes, or scaffolds; no overhead reaching
> with her right arm or performing gross manipulation; repetitive fine dexterity or gripping with the
> right hand, or operating controls with the left lower extremity.  (Tr. 23-24, Finding 7)

Thus, at Step Four of the evaluation process, the ALJ found Plaintiff's residual functional

capacity would not preclude her from returning to her past relevant work as a convenience store

clerk/assistant manager.  (Tr. 23-24, Finding 8)

Despite the ALJ's conclusion at Step Four that Plaintiff could return to her past relevant

work at as a convenience store clerk/assistant manager, the ALJ nevertheless took testimony

from the VE to determine whether Plaintiff, considering her age, education, work experience,

---

[3]     An impairment or combination of impairments is considered "severe" when it "significantly limits an
individual's physical or mental abilities to do basic work activities."  20 C.F.R. § 404.1520(c); Social
Security Ruling ("SSR") 96-3p.

skills, and physical limitations, had the capacity to perform any alternative jobs, and that these types of job existed in significant numbers in the national economy.  *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).  In this case, VE testified that Plaintiff's previous jobs did not have any transferable skills (Tr. 48) but testified that given Plaintiff's limitations (as enumerated by the ALJ at the hearing), Plaintiff could perform her past job at the convenience store.  (49-50) Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act, as amended.[4]  (Tr. 24, Finding 9)

## VIII.  PLAINTIFF'S OBJECTIONS

Plaintiff raises two objections in her Brief, which are listed below:

Objection I.     The ALJ failed to perform an analysis of the Plaintiff's ability to perform her past relevant work that complies with the requirements of SSR 82-62, 20 C.F.R. §404.1520, and Fourth Circuit precedent.

Objection II.    The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

---

[4] The Commissioner acknowledges by brief that with regard to the upper extremity limitations, the ALJ's residual functional capacity assessment in the decision differs somewhat from the hypothetical question and Dr. Crosby's opinion, upon which the hypothetical was based. This appears to be merely a scrivener's error, since the ALJ explicitly relied on Dr. Crosby's assessment at the hearing in formulating the residual functional capacity.  The VE considered Dr. Crosby's assessment (Tr. 49-50) and found the limitations would not prevent Plaintiff from performing her past job as a convenience store cashier.  (Tr. 22-24, Findings 7-8)  Accordingly, the ALJ's ultimate determination that Plaintiff could perform her past work was supported by the VE's testimony, and the scrivener's error (to the extent that Plaintiff could argue it is a deficiency in the ALJ's decision writing) is not grounds for remand in this case.  *See, e.g., Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987) (an arguable deficiency in opinion writing is not cause for reversing the Commissioner).

# IX.  DISCUSSION

**Objection I.**     **The ALJ failed to perform an analysis of the Plaintiff's ability to perform her past relevant work that complies with the requirements of SSR 82-62, 20 C.F.R. §404.1520, and Fourth Circuit precedent.**

First, Plaintiff challenges the ALJ's determination of her residual functional capacity and the analysis of her ability to perform her past relevant work.[5]  However, the undersigned finds that ALJ's findings were supported by substantial evidence; as mentioned above, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays*, 907 F.2d at 1456.  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  The undersigned finds that the ALJ's decision is, in fact, supported by substantial evidence and thus it is recommended that the decision be affirmed.

As a threshold matter, it must be noted that "Social Security proceedings are inquisitorial rather than adversarial" and that the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 111 (2000), *citing Richardson v. Perales*, 402 U.S. 389 (1971); *see also Easley v. Finch*, 431 F.2d 1351 (4th Cir. 1970) (hearings on applications for Social Security disability entitlement are not adversary proceedings).  Nevertheless, despite the fact that a Social Security proceeding is not adversarial in nature, by statute, the claimant bears the burden of establishing a *prima facie* entitlement to benefits.  *See* 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a

---

[5]     *See* Plaintiff's Brief at 10-21.

disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). *See also Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981) (same). Accordingly, a claimant "bears the risk of non-persuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 (4th Cir. 1976). Thus, it is the Plaintiff's burden to show that she has a severe impairment. *See Bowen v.Yuckert*, 482 U.S. 137, 146 n.5 (1987). After reviewing the medical evidence, the ALJ acknowledged that some of Plaintiff's impairments were "severe" (obesity, diabetes, back and neck pain, hypertension, depression) (Tr. 19, 23, Finding 3). However, the mere existence of those severe impairments does not mandate a finding that Plaintiff was "disabled" within the meaning of the Act. Instead, and as mentioned above, Plaintiff had the burden to show her impairments caused functional limitations so severe as to preclude her from performing any substantial gainful activity for at least twelve consecutive months. *See Walton*, 535 U.S. at 217-22.

The ALJ set forth in his decision the specific, legitimate reasons for concluding that some of Plaintiff's impairments (shortness of breath, memory problems) were not severe (Tr.19-22 ). In making a disability determination, the ALJ must consider Plaintiff's impairments in combination and not fragmentize them in evaluating their effects. *See* 20 C.F.R. § 404.1523; *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In the present case, a review of the ALJ's decision shows he properly considered the limitations and restrictions imposed by *all* of Plaintiff's impairments, even those he did not specifically consider "severe". (Tr. 21-22). *See* 20 C.F.R. §§ 404.1523, 404.1545(e); SSR 96-8p; *see also Walker*, 889 F.2d at 49. For example, the ALJ acknowledged Plaintiff's diagnoses of arthritis and carpal tunnel syndrome. (Tr. 20-21)

However, the mere diagnosis of an impairment does not establish the condition is disabling; there must be a showing of related functional loss. *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986). As the ALJ noted, Dr. Williams opined that Plaintiff's pain was due more to bursitis than arthritis and an objective physical examination showed negative straight leg testing bilaterally, a negative Romberg's sign, the ability to stand and walk on her toes and heels, only mild lower extremity edema, somewhat reduced grip in her left hand, right shoulder rotation consistent with bursitis; and the ability to walk on the treadmill. (Tr. 20-21, 165-67) *See Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996) ("Subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant."). *See also* 20 C.F.R. § 404.1529. The ALJ also noted that no treating physician had ever suggested that Plaintiff was disabled. (Tr. 20-21) *See Lee v. Sullivan*, 945 F.2d 687, 693 (4th Cir. 1991) (the fact that no physician gave an opinion that the Plaintiff was permanently and totally disabled supported Commissioner's finding of nondisability).

Furthermore, the uncontroverted medical evidence demonstrated that Plaintiff's diabetes and hypertension were controllable with medication when she complied with her medication regimen, and these diagnoses had not resulted in any end organ damage or hypertensive cardiac disease. (Tr. 20-21, 133, 135-43, 197-99) In addition, according to Plaintiff's treating physician, Plaintiff's depression had responded well to Paxil. (Tr. 20- 21, 197) *See Gross*, 785 F.2d at 1166 (if a symptom can be reasonably controlled by medication or treatment, it is not disabling). Plaintiff testified she did not have any side-effects from her medications. (Tr. 58)

In January 2002, Dr. Brown noted that Plaintiff's gastrointestinal symptoms had resolved, despite the fact she never followed-up with a specialist. (Tr. 139) In fact, the record repeatedly showed Plaintiff was noncompliant with a number of treatment measures that had been suggested as effective (Tr. 41-42, 135-39, 197-99), which again is consistent with the ALJ's decision of nondisability, and his finding that Plaintiff's impairments were not so severe as to preclude her from performing a limited range of light work. *See Preston v. Heckler*, 769 F.2d 988, 990 n.1 (4th Cir. 1985) (noncompliance provides a basis for denying benefits); 20 C.F.R. § 404.1530. Although Plaintiff alluded to financial difficulties, there is no evidence that she ever sought low-cost or no-cost treatment. Moreover, Plaintiff's noncompliance with treating physician instructions to follow a diabetic diet, check her blood sugar levels at home, and lose weight cannot be justified by any alleged financial constraints. *See, e.g.,* Tr.139, 197.

Regarding Plaintiff's shortness of breath, the ALJ noted Plaintiff's testimony that it was only a problem if she over-exerted herself (Tr. 45) and that she had demonstrated a "very poor effort" on her pulmonary function test. (Tr. 20, 168-69) The ALJ also noted that medical records did not suggest any limitations due to Plaintiff's moderate obesity, stating "[t]here is no evidence that the claimant's weight in combination with any other impairment prevented the claimant from engaging in the walking, standing, lifting, or bending involved in the performance of sustained work activities". (Tr. 20) Thus, the ALJ found "[n]o medical evidence in the records including her consultative examination has proven she is unable to move her limbs or joints, despite bursitis in the upper shoulders." (Tr. 21). *See Johnson*, 434 F.3d at 658 (the ALJ could reject a claimant's testimony because it was inconsistent with the objective medical

evidence); *see also Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999) (lack of medically

necessary restrictions supported the ALJ's nondisability findings).

In his decision, the ALJ thoroughly considered and carefully discussed Plaintiff's

testimony and explained the reasons why he was not persuaded by Plaintiff's complaints of

disabling symptoms. (Tr. 22, 24-25) As the ALJ noted, although Plaintiff testified she had such

pain that she only could stand for 5 or 10 minutes, there was no evidence of prescriptions for

strong pain medication or referral to a pain management clinic; in fact, Dr. Brown noted Tylenol

worked well for Plaintiff's pain. (Tr. 21, 199). *See Shively*, 739 F.2d at 990 (the lack of strong

pain medication was inconsistent with claimant's allegations of disabling pain). The ALJ also

observed in his decision that despite Plaintiff's promise to be more compliant with her diet in

lieu of adding an additional medication or insulin to control her diabetes, Plaintiff admittedly had

not maintained her dietary restrictions. (Tr. 19-20, *see, e.g.* Tr. 133-34, 197) As noted above, if

a symptom can be reasonably controlled by medication or treatment, it is not disabling. *Gross v.*

*Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

In determining that Plaintiff was not disabled, the ALJ also considered Plaintiff's daily

activities. (Tr. 21) The record showed Plaintiff took care of her own personal hygiene,

including feeding, bathing, and dressing herself, and that she could wash dishes, do light dusting,

launder clothes, and clean at her own pace. (Tr. 21, 53-55, 58) Although it is true that Plaintiff's

activities alone may are not conclusive on the issue as to whether she could work despite her

impairments, together with the other evidence of record, these activities provided substantial

support for the ALJ's conclusion that Plaintiff's impairments were not disabling. *See Johnson*, 434 F.3d at 658.

Where there is a combination of impairments, as in the present case, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. *Id.* The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983.) In the present case, based on the entire record, the ALJ reasonably concluded that there was "no substantial evidence of an inability to walk, stand, lift, or carry, despite her allegations." (Tr. 21) The ALJ accounted for Plaintiff's limitations which were supported by the evidence by restricting her to a limited range of light work with the restrictions noted above. (Tr. 22) *See* 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8p. The ALJ then correctly found that Plaintiff's impairments "singularly or in combination," would not prevent her from performing her past relevant work. (Tr. 21-24; *see also* Tr. 23-24, Findings 7-8).

Plaintiff failed to present evidence which would show that her impairments "were so functionally limiting as to preclude her from performing any substantial gainful activity for at least twelve consecutive months." *See Blalock*, 483 F.2d at 775 (Plaintiff has the burden of proving disability and bears the burden of non-persuasion). In the present case, the evidence clearly indicated that while Plaintiff's impairments caused some pain and discomfort, they were

not disabling. *See, e.g., Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (simply because working might cause discomfort does not mandate a finding of disability). In conclusion, the court is of the opinion that the Commissioner's findings of fact are supported by substantial evidence and correct legal principles were applied.

**Objection II.     The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.**

Residual functional capacity is a determination, based on all of the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the determination of the residual functional capacity is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545-46; SSR 96-8p. Contrary to Plaintiff's argument,[6] the ALJ's findings with respect to Plaintiff's residual functional capacity were not "conclusory" in nature. *See Craig v. Apfel*, 212 F.3d at 436 (the "ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered"). In evaluating the record, the ALJ is merely required to build a "logical bridge" from the evidence to his conclusions. *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ in this case properly explained how he arrived at Plaintiff's residual functional capacity by identifying her functional restrictions and assessing her work-related abilities. (Tr. 19-22) *See* SSR 96-8; 20 C.F.R. § 404.1545(b),(c),(d). The court's review of the decision shows that the ALJ thoroughly discussed the medical and non-medical evidence preceding his determination of residual functional capacity and concisely summarized his conclusions without unnecessary repetition of the evidence. (Tr. 19-22) Plaintiff's argument to the contrary is unsupported by the record.

---

[6]     *See* Plaintiff's Brief at 18-19.

As discussed above, at Step Four of the five-step sequential analysis, the burden remained on Plaintiff to establish that she was incapable of performing her past relevant work. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992); *see also Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (only if Plaintiff demonstrates the inability to perform past relevant work does the burden shift to the Secretary to establish that other jobs exist in significant numbers in the national economy). Using this paradigm of analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. *See* 20 C.F.R. §§ 404.1512, 404.1520. It is only after Step Four, when the claimant establishes a *prima facie* case of disability, that the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980). The testimony of a vocational expert is required only if, and after, the burden shifts to the Commissioner at Step Five of the sequential evaluation process. *See, e.g., Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). Here, Plaintiff failed to meet her burden at Step Four, and, although the ALJ utilized the services of a VE (Tr. 47-57, 64-65), he was not required to do so. *See* 20 C.F.R. § 404.1566(e); SSR 82-62.

Although Plaintiff argues that the VE's testimony was "equivocal" as to whether she could perform her past relevant work, the record does not support her argument. In response to a

hypothetical question from the ALJ, the VE testified that a residual functional capacity as set forth by Dr. Crosby (Tr. 189-96) would not "necessarily rule out the convenience store clerk" position. (Tr. 50) The ALJ then sought clarification of the VE's response by asking about the impact of the overhead reaching limitation. In response, the VE explained that there was not "normally not a lot of overhead [reaching] in a convenience store". (Tr. 50) Thus, Plaintiff's claim that the ALJ failed to "sufficiently resolve questions raised" by the VE's testimony regarding her past relevant work is without support in the record. Here, the ALJ clearly recognized that Plaintiff had upper extremity limitations, and, in addition to incorporating Dr. Crosby's assessment of Plaintiff's residual functional capacity (Tr. 189-96), the ALJ concluded his hypothetical by stating, "I want to give the benefit of the doubt to the claimant, and put that there are some significant limitations in both the right and left upper extremity." (Tr. 50) Plaintiff's argument in her Brief is based upon an assumption[7] that the VE would have testified differently had the ALJ made a minor distinction for "no" (rather than "limited") overhead reaching, gross manipulation, or fine dexterity in his hypothetical question. This argument, however, is merely speculative and will not be entertained by this court, given the substantial evidence as a whole which supports the decision of the ALJ. (Tr. 22, 48-51) Indeed, Plaintiff's testimony supports the ALJ's findings. When describing the duties of her job, Plaintiff did not indicate that she was unable to perform it due to upper extremity limitations; to the contrary, she said the only reasons she could not perform the job were her fear of forgetting things and her alleged inability to deal with the public. (Tr. 60-61) Furthermore, Plaintiff testified that she

---

[7]    *See* Plaintiff's Brief at 13.

could sufficiently use her hands to wash dishes and "fix [herself] a sandwich," and that she could lift and carry light objects. (Tr. 53, 55-56) This evidence, combined with the VE's specific testimony that the convenience store job did not normally require overhead reaching (Tr. 50), supports the ALJ's determination that Plaintiff could perform her past relevant work, despite limitations imposed by her upper extremity impairments. Thus, Plaintiff's argument that the ALJ erred in finding she could return to her past relevant work because the upper extremity limitations in his hypothetical question to the vocational expert were not identical to the limitations he ultimately adopted, is not persuasive.[8] As noted above, the slight discrepancy between the upper extremity limitations in the ALJ's decision and those in the hypothetical question and Dr. Crosby's assessment, upon which the hypothetical was based, appears to be a scrivener's error, and is not fatal to the decision as a whole. "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and non-exertional demands of . . . work." SSR 82-62. Therefore, in addition to the testimony of the VE, the ALJ properly considered Plaintiff's testimony regarding the demands of her past relevant work including, for instance, that she was required to deal with the public, make change, deposit money, submit shift reports, and lift less than 10 pounds. (*See* Tr. 36-68, 61-63; *see also* Tr. 95, 109 (vocational analyses completed by Plaintiff)). The VE explicitly considered Dr. Crosby's assessment and found the limitations would not prevent Plaintiff from performing her past job as a convenience store cashier. (Tr. 22-24, Findings 7-8) Even if this court were to assume, for purposes of

---

[8]    *See* Plaintiff's Brief at 12-14.

discussion, that the VE's testimony was deficient, the ALJ's findings are supported by substantial evidence, including Plaintiff's testimony regarding her past work.

Next, Plaintiff alleges that the ALJ did not consider her testimony as to her functional limitations.[9] A review of the ALJ's decision, however, does not substantiate this allegation. (Tr. 18, 21-22) Indeed, the ALJ's decision explicitly discussed Plaintiff's allegations as to whether her mental impairments would preclude her from performing her past relevant work, but found they were not fully credible in light of other evidence of record. (Tr. 20-21) The ALJ noted, for instance, that although Plaintiff testified she "forgets" and was depressed, the record indicated her depression improved with medications and there were no objective findings of a memory impairment. (Tr. 20-21, 60-63, 197-99) The ALJ also noted that examination showed Plaintiff had a normal affect and intact verbal and math skills. (Tr. 20, 134-38, 165-67, 198) Moreover, Plaintiff's contention that her aversion to crowds would preclude the convenience store job (Tr. 60-61) is contradicted by the evidence which showed that her mental condition improved when she took her prescribed Paxil, and that she regularly attended church. (Tr. 58, 197)

In addition, the ALJ explicitly considered Plaintiff's testimony that she had difficulty getting up and that she needed to frequently sit down due to pain. (Tr. 21, 54-55) However, as discussed above, the ALJ found her subjective allegations "far exceed[ed]. . . the objective findings and observations which are reflected in her medical records". (Tr. 22) *See Craig v. Chater*, 76 F.3d at 591 ("Subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to

---

[9]     *See* Plaintiff's Brief at 14-15.

produce the actual pain, in the amount and degree, alleged by the claimant.”); *see also Gross*, 785 F.2d at 1166 (if a symptom can be reasonably controlled by medication or treatment, it is not disabling).

Finally, Plaintiff argues that the ALJ did not make findings in his decision regarding the physical and mental demands of Plaintiff's past relevant work.[10]  Although the Commissioner acknowledges the ALJ did not make specific findings in his decision which addressed these issues, the ALJ did engage in the required analysis at step four of the sequential evaluation as mandated in SSR 82-62.  To the extent the ALJ's decision may have been inelegantly written, an arguable deficiency in opinion writing is not grounds for reversal.  *See Benskin*, 830 F.2d at 883.  “[A] claimant will be found to be ‘not disabled’ when it is determined that he or she retains the [residual functional capacity] to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; OR
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-62

As discussed above, the ALJ properly determined Plaintiff's residual functional capacity, and he considered testimony from the VE and from the Plaintiff's with regard to the demands of her particular past relevant job as a convenience store cashier/assistant manager.  (Tr. 22-24, 36-41, 47-51, 60-65, Findings 7-8).  Furthermore, and as mentioned above, Plaintiff's past job as a cashier, as generally performed in the national economy, is consistent with her residual functional capacity for light work.  *See* DOT (#211.462-010).  In conclusion, the ALJ's Step Four findings were supported by substantial evidence.

---

[10]     *See* Plaintiff's Brief at 15.

## **RECOMMENDATION**

Based upon the foregoing, **it is recommended that the Commissioner's decision be affirmed.**

S/George C. Kosko
United States Magistrate Judge

October 20, 2006
Charleston, South Carolina