IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC
2007 AUG -9  A 10 26

Della J. Snipes,            )
                            )
        Plaintiff,          )
                            )   Civil Action No. 9:05-2724-SB
v.                          )
                            )   **ORDER**
Jo Anne B. Barnhart, Commissioner )
of Social Security Administration, )
                            )
        Defendant.          )
_____)

This is an action brought pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Plaintiff Della J. Snipes's ("Plaintiff" or "Snipes") claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. The record includes the report and recommendation ("R&R") of United States Magistrate Judge George C. Kosko, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a). The R&R recommends that this Court affirm the Commissioner's final decision. The Plaintiff filed timely objections to the R&R, and the Defendant filed a response to the Plaintiff's objections. See 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's R&R within ten days after being served with a copy).

## BACKGROUND

### I.     Procedural History

The Plaintiff was born on September 2, 1951, and she was 51 years old at the time she filed her application for benefits. The Plaintiff completed the seventh grade; she has

worked in the past as an assistant manager and a cashier at a convenience store and as a kitchen helper in a restaurant.

On April 10, 2003, the Plaintiff filed an application for DIB and SSI, alleging disability beginning on September 10, 2001, due to obesity, high blood pressure (hypertension), diabetes, memory loss, shortness of breath, dizziness, depression, joint pain, fatigue, carpal tunnel syndrome, and blurred vision. Her application was denied initially and upon reconsideration. On March 5, 2004, the Plaintiff filed a request for a hearing, and on January 26, 2005, a hearing was held before Administrative Law Judge ("ALJ") John Randolph Martin in Columbia, South Carolina. The Plaintiff, who was represented by counsel, appeared at the hearing and testified. Also, Vocational Expert ("VE") William W. Stewart, Ph.D. appeared and testified. On March 17, 2005, the ALJ issued a decision denying the Plaintiff's application, finding that the Plaintiff could perform her past relevant work as a convenience store cashier/assistant manager. The Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). On September 20, 2005, the Plaintiff filed the present action seeking judicial review of the Commissioner's final decision.

## II.    Medical Evidence

Dr. Philip A. Levin of Midlands OB/GYN provided medical records on the Plaintiff from February 16, 1998, through May 15, 2003. These records cover the Plaintiff's history of routine check-ups for gynecological visits.

Dr. Edwin R. Brown of Internal Medicine Associates provided medical records on the Plaintiff from January 22, 2001, through January 5, 2005. These records document

2

the Plaintiff's history of diabetes and hypertension.

In January of 2001, the Plaintiff reported to Brown that she sometimes felt jittery but was not anxious. Brown noted that the Plaintiff's blood pressure was elevated at 158/94, probably due to decongestants, that her stress level was stable, and that he did not check her blood sugar level.

In May of 2001, Brown noted that the Plaintiff's hypertension was controlled at 120/70. Upon complaints of blood in her stool and abdominal pain, Brown changed the Plaintiff's diabetes medication from Glucophage to Glucotrol and referred her to a gastrointestinal specialist.

Eight months later, in January 2002, Brown noted that the Plaintiff no longer had health insurance and that she had not been checking her blood sugar as recommended. Brown noted that the Plaintiff had not followed-up with the gastrointestinal specialist but that her symptoms of hematochezia and abdominal pain had resolved. The Plaintiff's blood pressure was mildly elevated (158/90, 140/94 upon recheck), and the Plaintiff reported that her fasting blood sugar that morning was 297. Brown noted that the Plaintiff's diabetes appeared to be uncontrolled and that the Plaintiff had a possible urinary tract infection. Brown increased the Plaintiff's Glucotrol and instructed her to check her blood sugar levels.

According to the record, the Plaintiff did not seek medical treatment again until March of 2003, more than a year later. At this time, Brown noted that the Plaintiff had stopped taking Actos after about one month because she could not afford it, that her blood sugars at home ranged from 150 to 250, and that blood tests showed a current non-fasting blood sugar level of 248. The Plaintiff had a normal affect upon examination, and her

3

blood pressure was slightly elevated at 142/86. Brown noted that the Plaintiff's diabetes appeared to be uncontrolled and that at her last visit, the Plaintiff had microscopic amounts of blood in her urine, but she did not follow-up. Brown encouraged the Plaintiff to apply for Medicaid and told her that if she did not qualify for Medicaid, then she should contact him to see if she qualified for a pharmaceutical company medical assistance program. Brown noted that "[h]er financial problems are complicating our attempts at controlling her diabetes." (Tr. at 135.)

In April of 2003, the Plaintiff presented to Brown with complaints of neck pain and exposure to hepatitis B and C. She told Brown that she was more compliant with her diet and was trying to lose weight. Lab work indicated that the Plaintiff's blood sugar level was 172, and there was no evidence of hepatitis. Brown noticed that the Plaintiff's diabetes was uncontrolled but "somewhat improved" and recommended that the Plaintiff take Actos or insulin for diabetes, which the Plaintiff declined pending her Medicaid application. Brown recommended that the Plaintiff get a neck x-ray and take Tylenol for her neck pain.

On August 4, 2003, Dr. Julian Williams performed a consultative examination of the Plaintiff in connection with her application for benefits. After the examination, Williams diagnosed the Plaintiff with: arthritis of the cervicolumbar spine, probably osteoarthritis; carpal tunnel syndrome of the left hand with some numbness on the lateral side of the hand; moderate obesity; controlled diabetes mellitus type 2; hypertensive vascular disease; and shortness of breath, possible pulmonary deficiency. (Tr. at 167.)

On August 28, 2003, the Plaintiff underwent a pulmonary function test at Aiken Regional Medical Center. The results of the test indicated results in the 52 to 60% range of expectation and stated that the Patient exhibited a very poor effort on the test.

In September of 2003, state agency physician Dr. William O. Crosby, III reviewed the evidence and completed a physical residual functional capacity assessment on the Plaintiff. Crosby noted limitations with regard to the Plaintiff's ability to lift and/or carry, ability to stand and/or walk, ability to sit, and ability to push and/or pull due to severe musculoskeletal impairments including arthritis and degenerative joint disease, respiratory deficiencies, and obesity. Specifically, Crosby indicated that the Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit and stand/walk about six hours in an eight-hour workday; never climb ropes/ladders/scaffolds; occasionally climb ramps/stairs; occasionally stoop; and frequently balance, kneel, crouch, and crawl.

In December of 2003, Dr. Joyce Lewis reviewed all of the evidence and reached the same conclusions as Crosby regarding the Plaintiff's limitations. She also opined that the Plaintiff's musculoskeletal problems and obesity were severe as of December 2001, her date last insured. Psychological consultant Dr. Samuel Goots also reviewed the medical evidence and opined that the Plaintiff did not have a medically determinable mental impairment.

On December 13, 2004, the Plaintiff returned to Brown for a visit. Brown noted that the Plaintiff needed to lose weight, had joint pain with weight bearing, and that Tylenol worked well for pain. The Plaintiff's blood pressure was elevated (130/100, 160/88 upon recheck), and Brown increased her Avapro. Brown noted that her diabetes and hypertension were poorly controlled and uncontrolled, respectively. Brown prescribed Actos; he also prescribed Paxil for the Plaintiff's depression and referred her to a medicine assistance program.

On December 20, 2004, the Plaintiff told Brown that she had stopped taking

5

Glucotrol because she was unsure whether she was supposed to continue taking it with Actos. Brown noted that the Plaintiff's blood sugar was uncontrolled at 352, but her blood pressure was improved as a result of the increased dose of Avapro (146/92, 80/100 upon recheck).

In January of 2005, Brown noted that the Plaintiff's blood sugar was in the 230's but improved, that she was noncompliant with her dietary restrictions, and that she had gained six pounds since her last visit. He also noted that the Plaintiff's depression was better and that she had a good response to Paxil. Because the Plaintiff's blood pressure was suboptimally controlled (150/98, 146/80 upon recheck), Brown prescribed an additional blood pressure medication. The Plaintiff declined an additional diabetes medication and stated that she would be more compliant with her diet and lose weight.

### III.    Administrative Hearing Testimony

At the hearing before the ALJ, held on January 26, 2005, the Plaintiff testified that her duties as a convenience store cashier/assistant manager included compiling reports and depositing money. She testified that her duties as a kitchen helper at Fatz Café included cleaning, heavy mopping, unloading groceries, and some food preparation. When asked why she could no longer work as a kitchen helper, the Plaintiff testified that she could no longer manage the heavy mop or stand on her feet all day due to terrible back pain. She also testified that she has trouble with her memory and that she had scorched a couple of things because she forgot she was cooking. With respect to the Plaintiff's carpal tunnel syndrome, she testified that one wrist was worse than the other, but she could not remember which one. When asked about the pain in her shoulders, the Plaintiff testified that her right shoulder had been worse than her left, but now her left shoulder

bothered her more. She testified that she has a hump on her back between her shoulders that hurts, as well as pain in her lower back, hips, and knees. Regarding her diabetes, the Plaintiff testified that she took Glucotrol and Actos but not insulin. The Plaintiff testified that she takes medication for hypertension and that she experiences occasional shortness of breath. She testified that she has trouble sleeping due to her joint pain and that she is depressed but is taking medication that has helped a little bit.

With respect to the Plaintiff's daily activities, she testified that she could bathe, dress, and feed herself. She testified that she has a driver's license but rarely drives because there are "too many crazy people out there who don't drive like they ought to." (Tr. at 52.) She stated that she washes dishes sometimes, straightens her bed, does light cleaning, washes clothes, fixes herself a sandwich, and tries to go to church on Sunday mornings. The Plaintiff testified that she can stand for up to five or ten minutes and then she sits down and rests for a bit. She testified that she can carry light things but nothing heavier than a gallon of tea.

At the hearing, the ALJ asked a VE to testify as to the Plaintiff's past relevant work experience. With respect to the Plaintiff's job at Fatz Café, the VE testified that the work was medium from a physical standpoint and ranged from unskilled to low semi-skilled. With respect to the Plaintiff's job as a convenience store cashier/assistant manager, the VE testified that the work would be classified in essentially the same way except the work was lighter, so it "could range from light to medium." (Tr. at 48.) The VE testified that none of the Plaintiff's skills were transferable to sedentary work. The ALJ then asked the VE a hypothetical question, namely, whether someone the same age as the Plaintiff, with the same educational background, past relevant work experience, and impairments (diabetes,

hypertension, depression, arthritis of the cervical lumbar spine, CTS of the left hand, moderate obesity, shortness of breath, possible pulmonary insufficiency, possible arthritis of the shoulder, in particular the right shoulder, and general arthritis pain) could perform any of the Plaintiff's past relevant work.  The VE testified that the café work would not be possible, but that, "I don't know that it would necessarily rule out the convenience store work." (Tr. at 50.)  The ALJ responded, "Well, I was wondering, because there's a lot of, from what she described, stocking and so forth.  Would that be a problem with the overhead reaching and so forth?" (Tr. at 50.)  The VE responded, "Could be," but he later stated, "[b]ut there normally is not a lot of overhead in a convenience store, but there is stocking shelves involved." (Tr. at 50.)  The claimant's attorney then asked the Plaintiff to explain to the ALJ why she would not be able to do the convenience store cashier/assistant manager job.  The Plaintiff explained that she was afraid that she would forget when she was giving out change and that she did not know how to deal with the public anymore.  She also explained that she could not stand for most of the day and that she was afraid of her memory failing her.

Later, the ALJ asked the VE a second hypothetical question considering the Plaintiff's testimony to be credible: "I want you to concentrate on the claimant's testimony, and to build a residual functional capacity based from that testimony.  Now, could this person do any of the claimant's past relevant work?" (Tr. at 64.)  The VE responded, "No, Your Honor, not on a reliable, sustained basis." (Tr. at 64.)



8

## STANDARD OF REVIEW

### I. The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. Mathews v. Weber, 423 U.S. 261, 269 (1976). The Court reviews *de novo* those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

### II. Judicial Review of a Final Decision

The role of the federal judiciary in the administrative scheme as established by the Social Security Act is a limited one. Section 205(g) of the Act provides that, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the

reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## DISCUSSION

### I.      The Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to

10

provide evidence of a significant number of jobs in the national economy that the claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. Walls, 296 F.3d at 290.

Here, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, September 10, 2001. At the second step, the ALJ found that the Plaintiff established that she had "severe" impairments (listed as obesity, non insulin diabetes mellitus, chronic back and neck pain, hypertension, and depression). Third, the ALJ found that these medically determinable impairments did not meet or medically equal any of the criteria listed in 20 C.F.R. § 404.1520(c) and 416.920(c). The ALJ then determined that the Plaintiff's allegations and testimony regarding her limitations were not totally credible and found that the Plaintiff retained the residual functional capacity ("RFC") to perform the physical exertional requirements of light work with restrictions of "lifting no more than 20 pounds occasionally and no more than 10 pounds frequently; standing/walking/sitting for about six hours each in an eight-hour workday; occasionally climb ramps/stairs and engage in activities that require stooping, but never climb ladders/scaffolds; no overhead reaching with her right arm or performing gross manipulation; repetitive fine dexterity or gripping with the right hand, or operating controls with the left lower extremity." (Tr. at 23-24.) At step four, the ALJ found that the Plaintiff's RFC did not preclude her from returning to her past relevant work as a convenience store cashier/assistant manager. Because the ALJ found that the Plaintiff failed to establish the fourth step, the ALJ did not proceed to the fifth step.

11

## II.     The Plaintiff's Complaint

On September 25, 2005, the Plaintiff filed the present action seeking judicial review of the Commissioner's final decision. In her brief, the Plaintiff raises the following arguments: (1) the ALJ failed to perform an analysis of the Plaintiff's ability to perform her past relevant work that complies with the requirements of Social Security Ruling 82-62[1] and Fourth Circuit precedent; and (2) the ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

With respect to the Plaintiff's first argument, she asserts that the ALJ erred in relying on the testimony of the VE in finding that the Plaintiff was able to perform her past relevant work because the VE's statements were equivocal on the Plaintiff's ability to return to her former work as a convenience store cashier/assistant manager. Specifically, when the ALJ asked the VE a hypothetical question about whether someone with the Plaintiff's characteristics and impairments could return to the Plaintiff's past work, the VE stated that

---

[1] Social Security Ruling 82-62 provides in part:

> Determination of the claimant's ability to do past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3), in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as it is generally performed in the economy. The decision as to whether the claimant retains the functional capacity to perform past work which as current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

S.S.R. 82-62.

the café work was ruled out, but that, "I don't know that it would necessarily rule out the convenience store work." The ALJ responded, "Well, I was wondering, because there's a lot of, from what she described, stocking and so forth. Would that be a problem with the overhead reaching and so forth?" (Tr. at 50.) The VE responded, "Could be. . . . But there normally is not a lot of overhead in a convenience store, but there is stocking shelves involved." (Tr. at 50.) The Plaintiff argues that this testimony from the VE fails to meet the requirements of Social Security Ruling 82-62, which provides that "every effort must be made to secure evidence to resolve issues as clearly and explicitly as circumstances permit." S.S.R. 82-62.

Next, the Plaintiff asserts that perhaps the most serious problem with the ALJ relying on the VE's testimony in determining that the Plaintiff could perform her past work as a convenience store cashier/assistant manager is that the ALJ failed to adopt the restrictions presented to the VE. Specifically, the ALJ asked the VE a hypothetical question that restricted the Plaintiff to "limited" reaching overhead with the right arm and indicated that her ability to perform gross manipulation with both upper extremities was limited to "frequent." In comparison, in his final decision, the ALJ limits the Plaintiff to "no overhead reaching with her right arm, no work requiring gross manipulation, and no repetitive fine dexterity or gripping with the right hand. The Plaintiff points out that the restrictions in the ALJ's hearing decision are more limited that the restrictions in the hypothetical question asked to the VE during the hearing. As a result, the Plaintiff argues that it was error for the ALJ to rely upon the VE's testimony.

Additionally, the Plaintiff argues that there is no evidence in the hearing decision that the ALJ considered the Plaintiff's stated reasons as to "past work requirements that can

13

no longer be met and the reason(s) for his or her ability to meet those requirements." S.S.R. 82-62. As a result, the Plaintiff argues that the ALJ's decision fails to meet the minimum requirements as set forth by S.S.R. 82-62, and therefore, the Court should remand the matter for consideration of the Plaintiff's stated reasons for being unable to perform her past relevant work.

Also, the Plaintiff claims that the ALJ did not make findings of fact "as to the physical and mental demands of the past job/occupation" as required by S.S.R. 82-62 and Fourth Circuit precedent. Therefore, the Plaintiff asks the Court to remand the case for consideration of the physical and mental demands of the Plaintiff's past relevant work as a convenience store cashier/assistant manager.

In addition to arguing that the ALJ erred in his determination that the Plaintiff could perform her past relevant work, the Plaintiff also asserts that the ALJ erred by failing to explain his findings regarding the Plaintiff's RFC, as required by S.S.R. 96-8p. Specifically, the Plaintiff states that the ALJ did not explain how he arrived at his finding that the Plaintiff was restricted to a limited range of light work activity. The Plaintiff states that although the ALJ summarized some of the medical evidence, the RFC assessment is simply conclusory and does not contain any rationale or references to the supporting evidence, as required by S.S.R. 96-8p.

### III.    The Defendant's Response

In response to the Plaintiff's brief, the Defendant argues that substantial evidence supports the Commissioner's final decision. The Defendant argues that the ALJ properly considered the "combined effects" of all of the Plaintiff's impairments in determining that the Plaintiff was restricted to a range of light work with certain limitations. The Defendant

asserts that the ALJ built a "logical bridge" from the evidence to his conclusions and properly explained how he arrived at the Plaintiff's RFC by identifying her functional restrictions and assessing her work-related activities. Additionally, the Defendant argues that the Plaintiff failed to meet her burden at step four – to demonstrate that she was incapable of performing her past relevant work. The Defendant states that although the ALJ utilized the services of a VE, he was not required to do so. The Defendant states, "Even assuming *arguendo* that the vocational expert's testimony was deficient, the ALJ's findings are supported by substantial evidence, including Plaintiff's testimony regarding her past work, and should be affirmed." (Def.'s Response at 19.) The Defendant asserts that the VE's testimony was not equivocal and that "the slight discrepancy between the upper extremity limitations in the ALJ's decision and those in the hypothetical question and Dr. Crosby's assessment, upon which the hypothetical was based, appears to be merely a scrivener's error." (Def.'s Response at 20.) Then, with respect to the Plaintiff's argument that the ALJ failed to make findings in his decision regarding the physical and mental demands of Plaintiff's past relevant work, the Defendants states, "[w]hile the Commissioner acknowledges the ALJ did not make specific findings in his decision, the ALJ did engage in the required analysis at step four of the sequential evaluation as mandated in S.S.R. 82-62." (Def.'s Response at 22.)

## IV. The Magistrate Judge's R&R

In the R&R, the Magistrate Judge found that the ALJ's decision was supported by substantial evidence and recommended that the Court affirm the decision. In so finding, the Magistrate Judge relied heavily on the Defendant's brief and concluded that the Plaintiff's arguments were without merit. Specifically, the Magistrate Judge determined that

the ALJ formed a proper analysis of the Plaintiff's ability to perform her past relevant work, taking into consideration all of the appropriate medical evidence and testimony. The Magistrate Judge also determined that the ALJ's findings regarding the Plaintiff's RFC were not conclusory, that the VE's testimony regarding whether the Plaintiff could perform her past relevant work was not equivocal, and that the slight discrepancy between the upper extremity limitations in the ALJ's decision and the hypothetical question asked to the VE was a scrivener's error. The Court does not agree with these findings, as explained below.

## V.     The Plaintiff's Objections

In her objections to the R&R, the Plaintiff first objects to the Magistrate Judge's finding that the difference in the hypothetical question and actual findings of the ALJ are "minor distinctions," a "slight discrepancy," or a "scrivener's error." The Plaintiff reasserts her argument that the ALJ's determination that the Plaintiff could return to her past relevant work based on the testimony of the VE was erroneous because the ALJ failed to adopt the restrictions presented to the VE in his findings in the hearing decision.

Second, the Plaintiff objects to the Magistrate Judge's evaluation of whether the ALJ properly explained his findings regarding the Plaintiff's RFC, as required by S.S.R. 96-8p. The Plaintiff argues that the ALJ did not build a "logical bridge;" rather, the ALJ simply stated, "Based on the totality of the evidence, the undersigned finds . . . ." The Plaintiff argues that S.S.R. 96-8p requires greater specificity.

## VI.    The Court's Decision

Having reviewed the record, including the parties's submissions and the R&R, the Court concludes that the ALJ's denial of benefits is not supported by substantial evidence,

16

for the following reasons.

First, the Court agrees with the Plaintiff that the ALJ failed to perform a proper analysis of the Plaintiff's ability to perform her past relevant work. In his decision, the ALJ found that the Plaintiff could perform her past work as a convenience store cashier/assistant manager based on the VE's testimony. The ALJ asked the VE a hypothetical question, namely, whether someone the of the same age as the Plaintiff, with the same educational background, work experience, and impairments, could perform any of the Plaintiff's past relevant work. The VE testified that the café work would not be possible, but that, "I don't know that it would necessarily rule out the convenience store work." (Tr. at 50.) The ALJ responded, "Well, I was wondering, because there's a lot of, from what she described, stocking and so forth. Would that be a problem with the overhead reaching and so forth?" (Tr. at 50.) The VE responded, "Could be" but later stated, "[b]ut there normally is not a lot of overhead in a convenience store, but there is stocking shelves involved." (Tr. at 50.)

Further complicating the matter is the fact that the ALJ did not adopt the same restrictions he presented to the VE. Namely, the ALJ asked the VE a hypothetical question restricting the hypothetical Plaintiff to "limited" reaching overhead with her right arm and indicated that her ability to perform gross manipulation was limited to "frequent." In contrast, in the hearing decision, the ALJ restricted the Plaintiff to no overhead reaching with her right hand, no gross manipulation, and no repetitive fine dexterity or gripping with the right hand. The Defendant argues that this "slight discrepancy" is only a scrivener's error; however, the Court is not so sure, especially in light of the fact that the ALJ twice listed the Plaintiff's limitations in his decision and both times he limited the Plaintiff to no

17

overhead reaching with her right hand, no gross manipulation, and no repetitive fine dexterity or gripping with the right hand. (See Tr. at 22, 24.) Importantly, if the ALJ did intend to find these limitations, the testimony of the VE becomes that much more unreliable and inappropriate for the ALJ to rely upon in determining that the Plaintiff retains the ability to perform her past relevant work.[2]

In addition, Social Security Ruling 82-62 provides that, "[d]etermination of the claimant's ability to do past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements . . . ." S.S.R. 82-62. Thus, the ALJ needed to consider the Plaintiff's stated reasons for her inability to return to her past relevant work; however, the decision does not indicate whether the ALJ took the Plaintiff's stated reasons into account and if so, his reasons for discounting her stated reasons.

Moreover, Social Security Ruling 82-62 also states, in pertinent part:

In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

. . .

2. A finding of fact as to the physical and mental demands of the past job/occupation.

. . . .

S.S.R. 82-62. Here, the ALJ undoubtedly failed to include among his findings a finding of

---

[2] The Court agrees with the Plaintiff that the VE's testimony is equivocal to begin with, demonstrated by his answers such as, "I don't know that it would necessarily rule out the convenience store work," and "Could be." Although the Defendant argues that the testimony of the VE was not required, the fact remains that the ALJ relied on this testimony, and the Court believes that in so relying, the ALJ failed to make "every effort . . . to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." S.S.R. 82-62.

18

fact as to the physical and mental demands of the Plaintiff's job as a convenience store cashier/assistant manager, making it difficult, if not impossible, for the Court to perform a proper review of this determination.

Moreover, with respect to the ALJ's finding of RFC, Social Security Ruling 96-8p provides that:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations. In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

See SSR 96-8p. Here, the ALJ found that "[b]ased on the totality of the evidence," the Plaintiff is restricted to a limited range of light work activity. Although the ALJ did summarize the medical evidence in his decision, he failed to describe how the evidence supported his RFC conclusion, and therefore, the Court agrees with the Plaintiff that the Commissioner failed to "build a logical bridge" from the evidence to his conclusions.

Based on the foregoing, the Court finds that the Commissioner's decision at Step Four of the sequential evaluation is not supported by substantial evidence. Stated simply, the Court finds that the ALJ failed to properly evaluate the Plaintiff's ability to perform her past relevant work as a convenience store clerk/cashier: by relying upon equivocal and inapposite VE testimony; by failing to consider the Plaintiff's stated reasons for being unable to perform her past work; by failing to include in his decision a finding of fact as to the physical and mental demands of the Plaintiff's past relevant work; and by failing to

19

describe with specificity how the evidence supported his RFC determination. As a result, the Court finds that the Plaintiff is entitled to a remand of the matter to the Commissioner for consideration of these issues and any other evidence either party cares to submit.

### CONCLUSION

Based on the foregoing, the Court declines to adopt the R&R, and instead, it is

**ORDERED** that the Commissioner's denial of benefits is reversed under sentence four of 42 U.S.C. § 405(g) and 1383(c)(3), and the matter is remanded to the Commissioner for reconsideration.

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

August 7, 2007
Charleston, South Carolina

### ADDENDUM

Should this remand result in the award of benefits, plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. ***This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.***[3]

---

[3] This language was taken from Stutts v. Astrue, 489 F. Supp. 2d 1291, 1295 (N.D. Ala. 2007).

20